1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11  MARTIN CORONA,                 )  Civil No. 07-1421-WQH(WVG)
                                   )
12                     Plaintiff,  )  REPORT AND RECOMMENDATION
                                   )  GRANTING IN PART AND DENYING
13  v.                             )  IN PART PLAINTIFF'S MOTION FOR
                                   )  SUMMARY JUDGMENT,
14  MICHAEL J. ASTRUE, Commissioner )  GRANTING IN PART AND DENYING
    of the Social Secuity          )  IN PART DEFENDANT'S CROSS-
15  Administration,                )  MOTION FOR SUMMARY JUDGMENT,
                                   )  REMANDING TO ADMINISTRATIVE
16                     Defendant.  )  LAW JUDGE
                                   )  (DOC. NOS. 30, 32)
17  _____

18

19                                 I

20                    **STATEMENT OF THE CASE**

21       In September 2004, Martin Corona (hereafter "Plaintiff")

22  applied for disability insurance benefits and supplemental security

23  income benefits under Titles II and XVI of the Social Security Act,

24  alleging that he suffered from a disability since February 5, 2004

25  [Transcript (hereafter "Tr.") 58-60].  The Commissioner denied the

26  application both initially and upon reconsideration.  (Tr. at 46-

27  50, 53-56).  Plaintiff untimely requested a hearing before an

28  Administrative Law Judge (hereafter "ALJ"), but demonstrated good

cause for his untimeliness. (Tr. 12).  On July 28, 2006, the ALJ held a hearing on Plaintiff's application. (Tr. 237-255).  On February 1, 2007, the ALJ issued a decision in which he found that Plaintiff was disabled as of May 1, 2006, but not before that date. (Tr. 12-18). The ALJ concluded the following: Plaintiff was 52 years old on the date of the alleged onset of disability.  He has limited education and is not able to communicate in English.  He has the severe impairments of major depression, right eye blindness and left eye hysterical loss of vision/somatoform disorder.  Since the alleged onset of his disability, Plaintiff was unable to perform his past relevant work as a fishing vessel deckhand or fish packer. In June 2007, the Appeals Council declined review of the ALJ's decision (Tr. 4-6).  On August 3, 2007, Plaintiff filed a Complaint for Review of Final Decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

On December 30, 2009, Plaintiff filed a Motion for Summary Judgment (hereafter "Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure.  On January 29, 2010, Michael J. Astrue, Commissioner of the Social Security Administration, (hereafter "Defendant"), through the United States Attorney, filed a Cross-Motion for Summary Judgment (hereafter "Cross-Motion") and Opposition to Plaintiff's Motion.

Plaintiff argues that the ALJ's ruling should be reversed because it lacks the support of substantial evidence and rests upon an error of law.  Defendant argues that the ALJ fairly and accurately summarized the relevant medical and other evidence to support his conclusion, and that he has not committed legal error.

## II

### STATEMENT OF FACTS

Plaintiff alleges that on February 5, 2004, he became disabled due to the loss of his right eye and severe depression. (Tr. 239). On July 28, 2006, the ALJ held a hearing regarding Plaintiff's application.  At the hearing, the ALJ ordered that Plaintiff undergo further psychological examination to test for mental retardation and organic brain damage. (Tr. 247, 252).  Plaintiff underwent further psychological examination. (Tr. 222-236). On February 1, 2007, the ALJ issued a decision in which he found that Plaintiff was disabled as of May 1, 2006, but not before that date. The ALJ also found that before May 1, 2006, Plaintiff was able to perform certain jobs that existed in the national economy. (Tr. 12-18).

## III

### SUMMARY OF APPLICABLE LAW

Title II of the Social Security Act (hereinafter "Act"), as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability.  42 U.S.C. § 423 (a)(1)(D).  Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a).  Both titles of the Act define "disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." Id.  The Act further provides that an individual

> shall be determined to be under a disability only if
> his physical or mental impairment or impairments are
> of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. Id.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 CFR §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation" at issue in this case. The severity regulation provides in relevant part:

If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. §§ 404.1520 (c), 416.920 (c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." §§ 404.1521 (b), 416.921(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; [u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting." Id.

1    If the claimant does not have a severe impairment or

2    combination of impairments, the disability claim is denied.

3    If the impairment is severe, the evaluation proceeds to the

4    third step, which determines whether the impairment is equivalent to

5    one of a number of listed impairments that the Secretary

6    acknowledges are so severe as to preclude substantial gainful

7    activity. §§ 404.1520(d), 416.920(d); 20 CFR pt. 404, subpt. P,

8    App. 1.  If the impairment meets or equals one of the listed

9    impairments, the claimant is conclusively presumed to be disabled.

10   If the impairment is not one that is conclusively presumed to be

11   disabling, the evaluation proceeds to the fourth step, which

12   determines whether the impairment prevents the claimant from

13   performing work he has performed in the past.  If the claimant is

14   able to perform his previous work, he is not disabled. §§ 404.1520

15   (e), 416.920(e).  If the claimant cannot perform his previous work,

16   the fifth and final step of the process determines whether he is

17   able to perform other work in the national economy in view of his

18   age, education, and work experience.  The claimant is entitled to

19   disability benefits only if he is not able to perform other work. §§

20   404.1520(f), 416.920(f).

21                              **IV**

22                          **DISCUSSION**

23       A. **SCOPE OF REVIEW**

24       The Secretary's decision to deny benefits will be disturbed

25   only if it is not supported by substantial evidence or it is based

26   on legal error.  Brawner v. Secretary of Health & Human Services,

27   839 F.2d 432, 433 (9th Cir. 1987). "Substantial evidence means

28   more than a mere scintilla but less than a preponderance.  It means

1  such relevant evidence as a reasonable mind might accept as adequate

2  to support a conclusion." Davis v. Heckler, 868 F.2d 323, 325-26

3  (9th Cir. 1989). To determine whether substantial evidence supports

4  the ALJ's decision, the court will review the administrative record

5  as a whole, weighing both the evidence that supports the ALJ's

6  decision and that which detracts from the ALJ's conclusion."

7  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The ALJ

8  is responsible for determining and resolving conflicts in medical

9  testimony. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

10  The ALJ is likewise responsible for resolving ambiguities. Id. The

11  Court must uphold the ALJ's decision where the evidence is

12  susceptible to more than one rational interpretation. Gallant v.

13  Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984). In reaching his

14  findings, the ALJ is entitled to draw inferences logically flowing

15  from the evidence. Beane v. Richardson, 457, F. 2d 758 (9th Cir.

16  1972), cert. denied, 409 U.S. 859 (1972).

17      **B. ALJ's FINDINGS AND CONCLUSIONS**

18      In this case, the ALJ specifically found the following:

19          1. Plaintiff meets the insured status

20      requirements of the Social Security Act through the

21      date of the decision.

22          2. Plaintiff had not engaged in substantial

23      gainful activity at any time relevant to this

24      decision.

25          3. Plaintiff has the following severe

26      impairments: major depression, right eye blindness,

27      and left eye hysterical loss of vision/somatoform

28      disorder.

07cv1421

1

2          Prior to May 1, 2006, Plaintiff exhibited mild

3     restrictions of activities of daily living; moderate

4     difficulties maintaining social functioning; moderate

5     difficulties maintaining concentration, persistence,

6     or pace; and no episodes of decompensation.  As of May

7     1, 2006, Plaintiff exhibited moderate to marked

8     restrictions of activities of daily living; moderate

9     to marked difficulties maintaining social functioning,

10    marked   difficulties   maintaining   concentration,

11    persistence,   or   pace;   and   no   episodes   of

12    decompensation.

13         4. Since the alleged onset date of disability,

14    Plaintiff has not had an impairment or combination of

15    impairments that meets or medically equals one of the

16    listed impairments.

17         5. After careful consideration of the entire

18    record, the undersigned finds that, prior to May 1,

19    2006, Plaintiff had the residual functional capacity

20    to perform simple repetitive tasks with minimal public

21    contact, at positions requiring only monocular vision.

22    As of May 1, 2006, Plaintiff is no longer able to do

23    so in the competitive workplace on a regular and

24    continuing basis.

25    In making this finding, the undersigned considered all

26    symptoms in accordance with requirements of 20 CFR

27    404.1529 and SSR's 96-4p and 96-7p.

28    At the hearing, Sidney Bolter, M.D., a board certified

psychiatrist, opined on the basis of his review of the record as a whole that the evidence was insufficient to make a reasoned determination of the nature and severity of Plaintiff's mental impairments.  In fact, Plaintiff had no treatment in one and one-half years. Consultative psychiatric and psychological evaluations were recommended and ordered, added to the record at exhibits 17F and 18F.  The consultative psychologist and psychiatrist opined that Plaintiff would be able to perform simple repetitive tasks, but identified significant signs, symptoms and findings consistent with Plaintiff's allegations as to the nature, severity and functionally limiting effects of his impairments.

The undersigned will credit those allegations as of six months prior to the date of the consultative examinations, prior to which I concur that Plaintiff was able to perform simple repetitive tasks within the parameters set forth above. Dr. Englehorn, the consultative examining psychiatrist, recommended mental health treatment and medication.

The record shows that Plaintiff' opthamologist did not consider him disabled, but rather, declared him fit for duty.  No visual pathology was identified in the left eye (Exhibit 1F). Plaintiff's right eye is blind, and an artificial eye was implanted; examination of the left eye was normal. (Exhibits 1F, 2F, 3F, 4F, 6F).  The state agency found that Plaintiff's visual

impairment was not severe (Exhibits 7F, 14F). Moreover, Dr. Cooper, a board certified opthamologist, reiterated in January 2006 that Plaintiff's left eye visual loss had no physical etiology, Plaintiff's signs and findings within normal limits for that eye. Dr. Cooper thus diagnosed a hysterical loss of left (eye) vision. However, Dr. Cooper opined no specific resultant work related limitations aside from avoidance of hazardous environments (Exhibit 15F).

Plaintiff also developed depression, and began treatment in November 2004. Dr. Moscona, his psychologist, opined in January 2005 that Plaintiff was detached and distracted, disoriented and depressed. Additional objective testing was recommended, however, and longitudinal symptoms or objective pathology are lacking. I thus disagree with the state agency (Exhibits 10F, 11F) and Dr. Bolter that the record is insufficient to establish duration, and that, within 12 months of onset, Plaintiff was expected to be able to perform simple repetitive tasks with limited public contact. Indeed, aside from that January 2005 report the record is absent clinical reports prior to the consultative examinations ordered after hearing. (Exhibit 8F).

Following the hearing, Dr. Englehorn, a psychiatrist opined on the basis of Plaintiff's examination that Plaintiff would be able to perform simple repetitive tasks. However, Dr. Englehorn did identify moderate

07cv1421

limitations in several areas of functioning, and opine(d)(sic) that Plaintiff had psychiatric disability involving profound depression. Psychiatric treatment and medication were recommended. Affect was flat, Plaintiff could not remember his own telephone number, and global functioning was notably marked by serious impairment secondary to demonstrated psychomotor pathology and symptomatology (Exhibit 17F). Dr. Whitehead, a psychologist, similarly opined that Plaintiff could perform simple repetitive tasks. However, Dr. Whitehead identified objective pathology consistent with an ability to respond appropriately to usual work situations, coworkers, supervisors, the public, or changes in a routine work setting. Indeed, memory, mood, affect, concentration, and cognition were impaired (Exhibit 18F).

After considering the evidence of record, <u>the undersigned finds that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms</u>, but that <u>Plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible prior to May 1, 2006</u>. For example, as noted by the medical expert, Plaintiff underwent minimal treatment and the record was absent ongoing symptoms or objective signs or findings to corroborate Plaintiff's allegations at that time. Moreover, the consultive examiners opined that Plaintiff would be

able to perform simple repetitive tasks. In fact, the only pertinent evidence of record prior to the onset is that from Dr. Moscona, who admitted that objective testing was needed; the state agency and Dr. Bolter opined that the record was insufficient to establish duration at that time, and that, within 12 months of Plaintiff's November 2004 depressive onset, Plaintiff was expected to be able to perform simple repetitive tasks with limited public contact. Nor did Dr. Moscona opine duration. Further, objective evaluation of Plaintiff's left eye has been normal, and Dr. Cooper merely recommended avoidance of hazardous work environments on the basis of the claimant's hysterical loss of vision.

6. Since the alleged onset date of disability, Plaintiff has been unable to perform his past relevant work as a fishing vessel deckhand or fish packer. So opined the vocational expert, and I concur and so find.

7. Plaintiff was born on August 7, 1951, and was 52 years old on the alleged disability onset date, defined as closely approaching advanced age; he attained advanced age in August 2006.

8. Plaintiff has a limited education and is not able to communicate in English.

9. Plaintiff possesses no transferable skills.

10. Prior to May 1, 2006, but not thereafter, considering Plaintiff's age, education, work

experience, and residual functional capacity, there were a significant number of jobs in the national economy that Plaintiff could have performed.

In determining whether a successful adjustment to other work can be made, the undersigned must consider Plaintiff's residual functional capacity, age, education, and work experience in connection with the Medical-Vocational Guidelines. If Plaintiff can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending on Plaintiff's specific vocational profile. When Plaintiff cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional and/or has non-exertional limitations, the medical vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations. If Plaintiff has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking. Plaintiff's ability to perform work at all exertional levels is comprised by nonexertional limitations. To determine the extent of erosion of the occupational base of unskilled work at all exertional levels caused by these limitations, the ALJ asked the vocational

expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functioning capacity as determined for the period prior to May 1, 2006. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as janitor (1 million nationally and 9,000 locally); hand packager (105,000 nationally and 700 locally); and laundry laborer (118,000 nationally and 1,400 locally). As of May 1, 2006, there are no jobs that Plaintiff is able to perform in the national economy, considering his residual functional capacity and vocational profile.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that prior to May 1, 2006, but not thereafter, Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy. Plaintiff has therefore been disabled since May 1, 2006.

11. Plaintiff was not disabled prior to May 1, 2006, but became disabled on that date and has

07cv1421

continued to be disabled through the date of this decision. (Tr. 14-17)(citations omitted)(emphasis in original).

### C. **The ALJ Did Not Err With Regard to Plaintiff's Borderline Intellectual Functioning**

Plaintiff argues that the ALJ failed to review and evaluate the substantial evidence of Plaintiff's borderline mental retardation as a severe mental impairment. Defendant argues that there is no evidence in the record of Plaintiff's borderline mental retardation. Therefore, the ALJ did not err in failing to review and evaluate any such evidence.

Plaintiff contends that on February 23, 2005, medical consultant Dr. Edward P. O'Malley (hereafter "Dr. O'Malley") reviewed Plaintiff's entire case file (Tr. 186) and opined that Plaintiff suffered from affective disorder and mental retardation (Tr. 189). Dr. O'Malley also noted that Plaintiff's "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, ie., the evidence demonstrates or supports onset of the impairment before age 22." (Tr. 193). Finally Dr. O'Malley opined that Plaintiff "can understand, remember, and carry out a two-step command involving simple instructions," "can sustain simple repetitive tasks with adequate pace and persistence," "can adapt and relate to coworkers and supervisors," and "cannot work with the public." (Tr. 188).

Additionally, Plaintiff contends that Dr. Esther Moscona and Dr. Lawrence Cooper, Plaintiff's treating physicians, corroborated that Plaintiff was "significantly limited" by borderline intellectual functioning.

07cv1421

However, Dr. O'Malley did not opine that Plaintiff had mental retardation. Dr. O'Malley merely indicated that mental retardation needed to be ruled out. (Tr. 193). Similarly, Dr. Moscona did not opine that Plaintiff had mental retardation. Rather, Dr. Moscona indicated that mental retardation needed to be ruled out. (Tr. 183). Dr. Moscona also noted that psychological testing was necessary to adequately assess Plaintiff's intellectual functioning. (Tr. 180, 183). Further, Dr. Cooper is an opthamologist who did not comment on Plaintiff's intellectual functioning.

The only diagnosis of Plaintiff's borderline intellectual functioning was the opinion of consultive examiner Dr. Dan Whitehead (hereafter "Dr. Whitehead")(Tr. 234). In October 2006, five months after the date that the ALJ found Plaintiff to be disabled, Dr. Whitehead examined Plaintiff and concluded that Plaintiff's overall intelligence was "in the borderline to low average range,"(Tr. 235), and that his "ability to understand, carry out and remember simple instructions, and respond appropriately to coworkers, supervisors and the public was in the low average to borderline" range. (Tr. 236). Dr. Whitehead did not find that Plaintiff suffered from mental retardation. Further, Dr. Whitehead opined that Plaintiff "seems fully capable of performing simple and repetitive tasks." (Tr. 236).

Therefore, the Court finds that the ALJ did not err in reviewing and evaluating Plaintiff's intellectual functioning. The record does not contain any evidence that Plaintiff suffered from mental retardation. Moreover, the ALJ ordered further expert opinions regarding Plaintiff's intellectual functioning to be obtained prior to his decision. These opinions were obtained and

07cv1421

did not conclude nor opine that Plaintiff suffered from mental retardation. Rather, the opinions of the doctors who further examined Plaintiff indicated that Plaintiff could perform simple repetitive tasks. Therefore, the Court concludes and RECOMMENDS that Plaintiff's Motion in this respect be DENIED and Defendant's Cross-Motion in this regard be GRANTED.

### D. The ALJ Did Not Err In Concluding That The Evidence In the Record Did Not Establish Plaintiff's Disability As Of February 2004

Plaintiff appears to contend[1] that the ALJ's conclusion that Plaintiff could perform simple repetitive tasks with minimal public contact is unsupported by the record. Plaintiff appears to further contend[2] that evidence in the record shows that Plaintiff was capable of non-public simple repetitive tasks by November 2005, 15 months after Plaintiff's alleged disability onset date of February 2004. Defendant asserts that Plaintiff fails to show that the ALJ erred in concluding that the evidence in the record did not establish Plaintiff's disability as of February 2004.

The evidence in the record establishes the following:

1. Dr. Moscona, Plaintiff's treating psychologist, began seeing Plaintiff on November 16, 2004. (Tr. 185). When Dr. Moscona last saw Plaintiff in January 2005, she noted that Plaintiff was emotionally "withdrawn," (Tr. 181), "will have... difficulty in functioning adequately," (Tr. 182), that he suffers from "severe depression," (Tr. 183), and that "psychological testing might clarify (his) level of functioning." (Tr. 183). The ALJ credited

---

[1]Plaintiff's arguments in this regard are unclear.

[2]See footnote 1.

all of Dr. Moscona's comments and noted that no longitudinal symptoms nor objective pathology were present in Dr Moscona's records pertaining to Plaintiff. (Tr. 15).

2. On July 28, 2006, at the hearing, medical expert Dr. Sidney Bolter, PhD. (hereafter "Dr. Bolter") testified that he reviewed Plaintiff's psychiatric file. He stated that the files indicate that the last time Plaintiff saw Dr. Moscona was one and one-half years before the hearing, that further psychological testing might clarify Plaintiff's intellectual functioning, that no further records from Dr. Moscona are in the record, and that the record is insufficient to establish symptoms of disability starting in February 2004, Plaintiff's alleged disability date. (Tr. 246-248).

3. On October 17, 2006, Dr. Dan Whitehead (hereafter "Dr. Whitehead") stated that he did not review any of Plaintiff's psychiatric records. He opined that the results of the tests he administered to Plaintiff indicated that Plaintiff's overall intelligence was "in the borderline to low average range," and that Plaintiff is "capable of performing a variety of work activities that require simple and repetitive tasks. (Tr. 235). His opinion does not mention the alleged onset date of Plaintiff's disability.

4. On November 6, 2006, Dr. H. Douglas Englehorn (hereafter "Dr. Englehorn") saw Plaintiff for a psychiatric consultation. (Tr. 226). Dr. Englehorn noted that Plaintiff reported that he had "a two year history of fairly steady levels of depression." He opined that Plaintiff is "probably capable of performing simple repetitive tasks," and has a "moderate impairment... (relating) to peers and

supervisors in the workplace." (Tr. 228). Dr. Englehorn's opinion does not mention the alleged onset date of Plaintiff's disability.

It is clear from the record that neither Plaintiff's treating psychologist, Dr. Moscona, nor any of the consultative psychologists or psychiatrists, Dr. Bolter, Dr. Whitehead and Dr. Englehorn, determined that Plaintiff was disabled as of February 2004, the alleged onset date of Plaintiff's disability. In fact, Dr. Moscona opined that further psychological testing was needed to assess Plaintiff's level of functioning. Further medical opinions revealed that Plaintiff was capable of performing simple repetitive tasks in a non-public setting. Further, it is clear that there is no evidence in the record that shows that February 2004 was the onset date for Plaintiff's disability.

Plaintiff attempts to support his assertion that the onset of his disability began in February 2004. Plaintiff cites the Notice of Reconsideration (Tr. 47), and a claim representative's purported interpretation of the evidence (Tr. 203). However, Plaintiff's reliance on these documents is misplaced. These documents are not medical evidence of the onset of Plaintiff's disability. Notably, on the same day the claim representative purportedly interpreted the evidence, Dr. O'Malley opined that Plaintiff had few significant limitations, could understand, remember and carry out two-step commands involving simple instructions, and could perform repetitive tasks with adequate pace and persistence, but could not work with the public. (Tr. 186-188).

As a result of the foregoing, the Court can not conclude that the ALJ erred in not finding Plaintiff's disability onset date to be in February 2004. Consequently, the Court RECOMMENDS that

Defendant's Cross-Motion in this regard be GRANTED and Plaintiff's Motion in this regard be DENIED.

### E. Plaintiff Was Not Disabled Under The Medical-Vocational Guidelines Or 20 C.F.R. §202.1562

Plaintiff argues that the ALJ failed to consult the Medical-Vocational Guidelines in finding that Plaintiff was not disabled from February 2004 to May 2006. Defendant argues that the Medical-Vocational Guidelines to which Plaintiff refers are inapplicable.

Once a claimant establishes that he suffers from a severe impairment that prevents him/her from doing any past work, the claimant has made a *prima facie* showing of disability. At this point, the burden shifts to Defendant to show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999), 20 C.F.R. § 404.1560(b)(3). There are two ways for Defendant to meet the burden of showing that there is other work in "significant numbers" in the national economy that a claimant can perform: (a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subt. P, app. 2. Id. at 1101, citing Desrosiers v. Sec'y of Health & Human Services, 846 F.2d 573, 577-578 (9th Cir. 1988)(emphasis added).

In some cases, the ALJ may rely on the Medical-Vocational Guidelines to determine whether a claimant can perform work that exists in "significant numbers" in the national economy. The Medical-Vocational Guidelines are a grid system for assessing claims that involve substantially uniform levels of impairment. The Guidelines may be used where they completely and accurately

represent a claimant's limitations. <u>Tackett</u>, <u>supra</u>, at 1101-1102. "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in way not contemplated by the Guidelines. In such a case, the Guidelines would be inapplicable. <u>Desrosiers</u>, <u>supra</u>, at 577.

Here, Plaintiff claims that the ALJ failed to consult Medical-Vocational Guidelines, Rule 201.00(g)[3], 202.00(d)[4], 203.00(b)[5] and 20 C.F.R. 404.1562[6].

Plaintiff argues that under Medical-Vocational Guidelines, Rule 201.00(g), the ALJ should have found him to be disabled. However, Rule 201.00(g) refers to a claimant that is restricted to sedentary work. The evidence in the record reflects that Plaintiff was not restricted to sedentary work. Instead, the record reflects that Plaintiff's impairments were monocular vision and depression, neither of which require him to be restricted to sedentary work. This Rule does not completely and accurately represent Plaintiff's

[3]Medical-Vocational Guideline Rule 201.00(g) states in pertinent part: "Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disability ordinarily obtains..."

[4]Medical-Vocational Guideline Rule 202.00(d) states in pertinent part: Maximum sustained work capability limited to light work as a result of severe medically determinable impairment(s). "... where age, though not advanced, is a factor which significantly limits vocational adaptability, an individual's vocational scope is further significantly limited by... inability to communicate in English, a finding of disability is warranted...

[5]Guideline Medical-Vocational Guideline Rule 203.00(b) states in pertinent part: : "an individual who (1) has marginal education, (2) has work experience of 35 years or more during which he or she did only arduous unskilled physical labor, (3) is not working, and (4) is no longer able to do this kind of work because of severe impairment(s) is disabled.

[6]20 C.F.R. §404.1562(a) states in pertinent part: "If you have more than a marginal education and work experience of 35 years or more during which you did only arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of severe impairments,... we will consider you unable to do lighter work, and therefore, disabled.

07cv1421

limitations.   Therefore, Rule 201.00(g) is inapplicable to Plaintiff.

Plaintiff argues that under Medical-Vocational Guidelines, Rule 202.00(d), the ALJ should have found him to be disabled. However, Rule 202.00(d) applies to a claimant who has been exertionally limited to light work.   The evidence in the record reflects that Plaintiff was not restricted to light work.   Instead, the record reflects that Plaintiff's impairments were monocular vision and depression, neither of which require him to be restricted to light work. This Rule does not completely and accurately represent Plaintiff's limitations.   Therefore, Rule 202.00(d) is inapplicable to Plaintiff.

Plaintiff argues that under Medical-Vocational Guidelines, Rule 203.00(b) and 20 CF.R. §404.1562, the ALJ should have found him to be disabled.   However, Rule 203.00(b) and 20 C.F.R. §404.1562 apply to a claimant who has been exertionally limited to medium work, who has had more than 35 years experience in arduous unskilled labor. The evidence in the record reflects that Plaintiff's impairments did not require him to be restricted to medium work or that he had 35 or more years experience of arduous unskilled labor. This Rule and 20 CF.R. §404.1562 do not completely and accurately represent Plaintiff's limitations. Therefore, Rule 203.00(b) and 20 CF.R. §404.1562 are inapplicable to Plaintiff.

Moreover, the ALJ is not required to consult the Medical-Vocational Guidelines.   Instead, the ALJ can seek vocational expert testimony. <u>Tackett</u>, <u>supra</u> at 1101.   That is exactly what the ALJ did in this case. (See Tr. 250-255).

Consequently, the Court can not conclude that the ALJ erred

in failing to consult the Medical-Vocational Guidelines, as argued by Plaintiff. As a result, the Court RECOMMENDS that Defendant's Cross-Motion in this regard be GRANTED and Plaintiff's Motion in this regard be DENIED.

### F. The ALJ Erred in Relying On Vocational Expert Testimony Without Establishing That The Testimony Was Consistent With the Dictionary of Occupational Titles

Plaintiff argues that the ALJ erred in relying on expert vocational testimony regarding what jobs Plaintiff could perform because he did not establish that the evidence was consistent with the Dictionary of Occupational Titles (hereafter "DOT"). Defendant asserts that Plaintiff fails to show that the vocational expert's testimony was inconsistent with the DOT.

Once the ALJ decides that a claimant cannot return to his former job, the ALJ must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform, despite his identified limitations.  A vocational expert witness may be required to identify jobs that match the abilities of the claimant, given his limitations. <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995)

Social Security Ruling 00-4p (hereafter "SSR 00-4p") states in pertinent part that "(w)hen a (vocational expert)...provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that (vocational expert)... evidence and information provided in the (DOT)."(emphasis added)

SSR 00-4p further provides that the adjudicator **"***will ask***"** the vocational expert "if the evidence he or she has provided is consistent with the (DOT) and obtain a reasonable explanation for

any apparent conflict." SSR 00-4p at *4 (emphasis added), <u>Massachi</u> <u>v. Astrue</u>, 486 F.3d 1149 (9th Cir. 2007).

An ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. <u>Johnson</u>, 60 F.3d at 1435.

> The procedural requirements of SSR 00-4p ensure
> that the record is clear as to why an ALJ relied on
> a vocational expert's testimony, particularly in
> cases where the expert's testimony conflicts with the
> (DOT)... (T)he Social Security Administration relies
> primarily on the (DOT) for 'information about the
> requirements of work in the national economy.' The
> Social Security Administration also uses testimony
> from vocational experts to obtain occupational
> evidence. Although evidence provided by a vocational
> expert 'generally should be consistent' with the
> (DOT), neither the (DOT) nor the (vocational
> expert)... evidence automatically 'trumps when there
> is a conflict.' *Thus, the ALJ must first determine*
> *whether a conflict exists. If it does, the ALJ must*
> *then determine whether the vocational expert's*
> *explanation for the conflict is reasonable and*
> *whether a basis exists for relying on the expert*
> *rather that the (DOT).*

<u>Massachi</u>, 406 F.3d at 1153 (citations omitted)(emphasis added).

1. <u>Janitor</u>

Mark Remas, the vocational expert testified, and the ALJ found, that Plaintiff could perform the work of a Janitor. (Tr. 253-254, 17). The ALJ found that, "(P)ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the DOT." (Tr. 17). The ALJ also found that Plaintiff was blind in his right eye (Tr. 14), and acknowledged that Plaintiff had monocular vision and was limited by the fact that he does not have depth perception[7]. (Tr. 253). However, the ALJ did not ask the vocational expert about any possible conflict between his testimony and the evidence provided by the DOT. Had the ALJ asked about a

---

[7]Adults without binocular vision experience distortions in depth perception and visual measurement of distances. MedicineNet.com

conflict, or reviewed the DOT's description of a Janitor, he would have found that depth perception is required to perform the job of a Janitor. (DOT § 382.664-010).  Therefore, Plaintiff would not be able to perform this job.  As a result, there is a conflict between the vocational expert's testimony and the evidence provided by the DOT.  The ALJ failed to discharge his duties pursuant to SSR 00-4p.

Additionally, the ALJ found that Plaintiff was not able to communicate in English. (Tr. 16).  However, the DOT describes a Janitor to be able to read safety rules and instructions in the use and maintenance of shop tools and equipment, write reports and essays with proper format, punctuation, spelling and grammar using all parts of speech, and speak before an audience with poise, voice control and confidence using correct English.  Had the ALJ asked about a conflict or reviewed the DOT evidence, he would have found that the requirements of a Janitor contain language and reading requirements.

The Court finds that there is a conflict between the vocational expert's testimony and the evidence provided by the DOT.  Further, the ALJ's decision does not comport with his own findings and evidence presented in the record.

The ALJ did not ask the vocational expert about any possible conflict between his testimony and the evidence provided by the DOT.  Consequently, the ALJ did not discharge his duties pursuant to SSR 00-4p.  Therefore, in light of the record presented, the Court finds that Plaintiff's lack of depth perception and his inability to communicate in English make it impossible to him to perform the work of a Janitor.

2. <u>Hand Packager</u>

The vocational expert testified, and the ALJ found, that

1  Plaintiff could perform the work of a Hand Packager. However, the ALJ
2  did not ask the vocational expert about any conflicts between his
3  testimony and the evidence presented in the DOT.

4       Specifically, had the ALJ asked the vocational expert about
5  any conflicts, or reviewed the DOT's evidence of the requirements for
6  a Hand Packager, he would have found that the position requires the
7  recognition of the meaning of 2,500 two- or three- syllable words and
8  reading at 95-120 words per minute.   Further, the ALJ would have
9  found that a Hand Packager must be able to speak simple sentences
10 using normal word order and present and past tenses.   Additionally,
11 the ALJ would have found that a Hand Packager must have depth
12 perception. (DOT § 920.587-018).

13      As noted above, the ALJ found that Plaintiff was unable to
14 communicate in English and acknowledged that Plaintiff does not have
15 depth perception.   Therefore, the Court finds that there is a
16 conflict between the vocational expert's testimony and the evidence
17 provided by the DOT. Further, the ALJ's decision does not appear to
18 comport with his own findings and the evidence presented in the
19 record.

20      The ALJ did not ask the vocational expert about any possible
21 conflict between his testimony and the evidence provided by the DOT.
22 Consequently, the ALJ did not discharge his duties pursuant to SSR
23 00-4p.   Therefore, the Court finds that Plaintiff's inability to
24 communicate in English and his lack of depth perception make it
25 impossible for him to perform the work of a Hand Packager.

26      3. Laundry Worker

27      The vocational expert testified, and the ALJ found, that
28 Plaintiff could perform the work of a Laundry Worker. However, the

ALJ did not ask the vocational expert about any conflicts between his testimony and the evidence presented in the DOT. Specifically, had the ALJ asked the vocational expert about any conflicts, or reviewed the DOT's evidence of the requirements for a Laundry Worker, he would have found that the position requires the recognition of the meaning of 2,500 two- or three- syllable words and reading at a rate of 95-120 words per minute. (DOT § 361.684-014)

As noted above, the ALJ found that Plaintiff was not able to communicate in English.  Therefore, the Court finds that there is a conflict between the vocational expert's testimony and the evidence provided by the DOT. Further, the ALJ's decision does not appear to comport with his own findings and with the evidence presented in the record.

The ALJ did not ask the vocational expert about any possible conflict between his testimony and the evidence provided by the DOT. Consequently, the ALJ did not discharge his duties pursuant to SSR 00-4p.  Therefore, the Court finds that Plaintiff's inability to communicate in English make it impossible for him to perform the work of a Laundry Worker.

As a result, the Court RECOMMENDS that Plaintiff's Motion in this regard be GRANTED and Defendant's Cross-Motion in this regard be DENIED.  Further, the Court RECOMMENDS that this case be REMANDED to the ALJ so he can discharge his duties pursuant to SSR 00-4p.

G. <u>The ALJ Did Not Err With Regard To the Opinions of Dr. Moscona and Dr. Cooper</u>

Plaintiff contends that the ALJ erred because he did not "expressly state clear and convincing reasons" for rejecting the opinions of Dr. Moscona and Dr. Cooper, Plaintiff's treating physicians.  Defendant argues that the ALJ did not reject the

1  opinions of Dr. Moscona and Dr. Cooper. Therefore, the ALJ did not
2  need to state clear and convincing reasons for any such rejection.

3      Medical opinions of a claimant's treating physicians are
4  entitled to special weight and, if the ALJ disregards those opinions,
5  "he must set forth specific legitimate reasons for doing so, and this
6  decision must itself be based on substantial evidence." Embrey v.
7  Bowen, 849 F.2d 418, 421 (9th Cir. 1988), citing Cotton v. Bowen, 799
8  F.2d 1403, 1408 (9th Cir. 1986).

9      A treating physician's medical opinion as to the nature and
10  severity of an individual's impairment must be given controlling
11  weight if that opinion is well-supported and not inconsistent with
12  the other substantial evidence in the record. Edlund v. Massanari,
13  253 F.3d 1152, 1157 (9th Cir. 2001).

14          1. Dr. Moscona

15      Plaintiff contends that the ALJ failed to state clear and
16  convincing reasons for rejecting Dr. Moscona's Global Assessment
17  Functioning (hereafter "GAF") score of 32 for Plaintiff. However,
18  Dr. Moscona did not opine on Plaintiff's GAF. In fact, Dr. Moscona
19  commented that "(p)sychological testing might clarify (Plaintiff's)
20  level of functioning." (Tr. 180, 183). Accordingly, the ALJ noted
21  that "longitudinal symptoms and objective pathology are lacking" from
22  Dr. Moscona's records regarding Plaintiff and "the record is absent
23  clinical reports prior to the consultive examinations ordered after
24  hearing..." (Tr. 15). Therefore, the Court can not conclude that the
25  ALJ failed to state clear and convincing reasons for rejecting Dr.
26  Moscona's GAF score of 32 for Plaintiff because Dr. Moscona did not
27  opine on Plaintiff's GAF.

28

2. <u>Dr. Cooper</u>

Plaintiff contends that the ALJ failed to state clear and convincing reasons for rejecting Dr. Cooper's opinion regarding Plaintiff's limitations. Dr. Cooper opined that "(i)f not for the loss of (Plaintiff's) right eye (enucleation) there would be no reason he would not have been able to continue working as a crew member," and "(t)he dysfunctionality of the vision in (Plaintiff's) left eye would render him incompetent to function safely whilst being around dangerous equipment and would be a recipe for further accidents." (Tr. 215). The ALJ agreed with Dr. Cooper by finding, "(s)ince the alleged onset date of disability, (Plaintiff) has been unable to perform his past relevant work as a fishing vessel deck hand or fish packer." (Tr. 16). Therefore, the ALJ did not reject Dr. Cooper's opinion of Plaintiff's limitation. Consequently, the ALJ did not need to state clear and convincing reasons for rejecting Dr. Cooper's opinion.

As a result, the Court can not conclude that the ALJ erred with regard to the opinions of Dr. Moscona and Dr. Cooper. Therefore, the Court RECOMMENDS that Plaintiff's Motion in this regard be DENIED and Defendant's Cross-Motion in this regard be GRANTED.

## VI

## <u>CONCLUSION</u>

The Court has found that most of the arguments presented in Plaintiff's Motion for Summary Judgment are unsupported by the record in this case. However, the Court has found that conflicts exist between the vocational expert's testimony and the evidence provided by the DOT. Additionally, the Court has found that evidence in the

record shows that Plaintiff does not have depth perception and is unable to communicate in English. Therefore, he would be unable to perform the work of the occupations suggested by the vocational expert and found by the ALJ. Therefore, it is RECOMMENDED that the case be REMANDED to the ALJ so that he can discharge his duties pursuant to SSR 00-4p. Further, it is RECOMMENDED that Plaintiff's Motion for Summary Judgment be GRANTED in part and DENIED in part and Defendant's Cross-Motion for Summary Judgment be GRANTED in part and DENIED in part.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than <u>May 19, 2010</u>, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than <u>June 18, 2010</u>. The parties are advised that failure to file objections within the specified time may waive the right to raise

1   those objections on appeal of the Court's order.   <u>Martinez v. Ylst</u>,

2   951 F.2d 1153 (9th Cir. 1991).

3

4

5

6

7   DATED: April 19, 2010

8

9   _____

10                          Hon. William V. Gallo
                           U.S. Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28